```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
```

EVARISTE Soglo et al.            :
                                 :
v.                               :   Civil No. WMN-05-2449
                                 :
DirectTV, INC. et al.            :
                                 :

**MEMORANDUM**

Before the Court is Defendants' motion to dismiss the complaint. Paper No. 4. The motion is ripe. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion should be granted.

Defendant DIRECTV is a Delaware company engaged in the business of providing direct broadcast satellite services to consumers. Defendant DIRECTECH is a Louisiana company and a service provider for DIRECTV. Plaintiff Advanced Satellite Group, Inc. (Advanced) entered into a contract to provide services in the installation and maintenance of DIRECTV systems. Plaintiff Evariste Soglo is the President and an owner of Advanced. Soglo states that he is a black African who recently immigrated from Benin, Africa.

Plaintiffs allege in the Complaint that Defendants assigned Advanced more problematic and less economically advantageous jobs and sites than those assigned to white contractors. They also allege that Defendants routinely distorted Plaintiffs' billing records, routinely double billed Plaintiffs for equipment and

supplies, and refused to correct those errors.  Plaintiffs assert that Defendants' conduct caused Plaintiffs significant economic damages.  Plaintiffs posit that Defendants were motivated by racial and national origin bias and cite disparaging comments made by Defendants' agents and employees as evidence of that animus.  Although the counts in the complaint are not as clearly delineated as they might be, it appears that Plaintiffs are asserting the following claims: 1) a discrimination claim under 42 U.S.C. § 1981 for unlawful interference with Plaintiffs' right to make and enforce a contract; 2) a state law claim for intentional interference with a contractual relationship; and (3) a state law claim for intentional misrepresentation.

The contacts under which Plaintiffs provided services to Defendants contain the following clauses:

> e. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Louisiana, without regard to any conflict of law principles.
>
> f. <u>Jurisdiction and Venue</u>. In the event of any legal action involving this Agreement, the parties agree that exclusive venue shall be where DIRECTECH's corporate headquarters is located.  With respect to all disputes under this Agreement, Contractor submits itself to the exclusive personal jurisdiction of the federal and state courts of the State of Louisiana.

DIRECTECH SUB AFS PROVIDER AGREEMENT ¶ 25.  Relying on these provisions, Defendants argue in their motion that Plaintiffs'

claim must be dismissed.[1]

After the Supreme Court's pivotal decision in M/S Bremen v. Zapata Off-Shore Co., it is well-settled under federal law that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. 1, 10 (1972). To prevail, the resisting party must meet a heavy burden; it must make a strong showing that the clause should be set aside. Id. at 15. The Bremen Court recognized only three (3) situations in which forum selection clauses are unreasonable and therefore unenforceable: (1) when the plaintiff's agreement to the clause itself is induced by fraud or overreaching; (2) when "enforcement would contravene a strong public policy of the forum in which suit is brought;" or (3) when "trial in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court." Id. at 15, 18.[2]

---

[1] Courts have considered the enforceability of forum selection clauses under various mechanisms including: Rule 12(b)(1) (lack of subject matter jurisdiction); Rule 12(b)(3) (improper venue); Rule 12(b)(6) (failure to state a claim); and 28 U.S.C. §§ 1404, 1406(a) (transfer of venue). Here, Plaintiffs acceded to Defendants' suggestion that the motion be treated as one under Rule 12(b)(1).

[2] Plaintiffs and Defendants seem to assume that federal as opposed to state law governs the interpretation and enforceability of the forum selection clause. The Court need not decide that issue as the result would be the same under federal or Louisiana law. See Pitts, Inc. v. Ark-La Resources, 717 So.2d

Plaintiffs argue against enforcement of the forum selection clause primarily under the third exception.  They assert that because Defendants' agents and employees as well as Plaintiffs and other witnesses are located in Maryland and because "the contract was performed solely in Maryland,"[3] Plaintiffs and other potential witnesses "would experience a great inconvenience if they were required to travel to Louisiana for the litigation of this matter."  Opp. 6.  Although this could be a legitimate concern, when faced with similar arguments the Supreme Court in Bremen held that the forum selection clause should be enforced, nonetheless, because "whatever 'inconvenience' [the challenging party] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting."  Bremen at 17-18.  Although Plaintiffs mention that the forum clause is a part of a "standard form contract," they do not claim that they did not have notice of the forum selection clause, nor that any of the inconveniences on

---

268, 270 (La. App. 1998) ("Forum selection clauses are legal and binding, and one seeking to set aside such a provision bears a heavy burden of proof. . . .  Such clauses are prima facie valid and should be enforced unless the resisting party clearly proves that enforcement would be unreasonable and unjust, or that the clause arises from fraud or overreaching, or that enforcement would contravene a strong public policy of the forum where the suit is brought.") (citing Bremen).

[3] In the Complaint, Plaintiffs allege that "Defendants['] unlawful discriminatory practices [were] initiated and committed in Maryland, Virginia and [the] District of Columbia."  Compl. ¶ 2.

4

which they now rely were not foreseeable at the time they signed the contract.  Plaintiffs have not met the high burden of proof necessary to show that this situation merits an exception to the presumption of enforceability of forum selection clauses.

Plaintiffs also complain that the contract at issue was "the result of unequal bargaining positions," and "overreaching by the defendants."  Opp. at 7.  While such an argument may have once held sway, more recent decisions of the federal courts have enforced forum clauses in contracts between parties of significantly more disparate bargaining power.  For example, in Carnival Cruise Lines, Inc. v. Shute, the Supreme Court found enforceable a forum clause on a passenger cruise ticket, despite the acknowledgment "that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line." 499 U.S. 585, 593 (1991).  This Court notes that the only two decisions[4] cited by Plaintiffs in which courts found the enforcement of a forum selection clause to be unreasonable were more than twenty-five years old, thus pre-dating the Shute decision.

Finally, Plaintiffs contend that, because "this dispute is

---

[4] Randolph Engineering Co. v. Fredenhagen Kommandit-Gesellschaft, 476 F. Supp. 1355 (W.D. Pa. 1979) and Leasewell, Ltd. v. Jake Shelton Ford, Inc., 423 F. Supp. 1011 (S.D. W. Va. 1976).

5

not one over faulty performance or lack of payment under the terms of the contract itself," it is not within the scope of the forum selection clause.  When two parties are in a contractual relationship, however, forum selection clauses can be applicable to tort causes of action when the "resolution of the [tort] claims relates to interpretation of the contract."  Berry v. Soul Circus, Inc., 189 F. Supp. 2d 290, 294 (D. Md. 2002) (quoting Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988)).  "The general rule is that when an action arises from a contract or contractual relationship between two parties, the choice of forum clause in that contract governs the parties' tort as well as contract claims."  Berry, 189 F. Supp. 2d at 294 (quoting K&V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft, 164 F.Supp. 2d 1260, 1263 (D.N.M. 2001), reversed on other grounds, 314 F.3d 494 (10th Cir. 2002)).  Determining whether tort claims relate to or arise from a contract is a case-specific endeavor that hinges on the facts and circumstances of each case.  See Terra Intern., Inc. v. Miss. Chem. Corp., 119 F.3d 688 (8th Cir. 1997).

    Here, all of the actions about which Plaintiffs complain, i.e, Defendants' billing practices and assignment of jobs, are actions directly related to the contract.  While Plaintiffs may attribute discriminatory motivation to those actions, Defendants' conduct clearly relates to duties and obligations under the

6

contract.  Plaintiffs themselves cast the Defendants' actions as "imped[ing] Plaintiffs' ability to enjoy the benefits, privileges, terms and conditions of the contractual relationship."  Compl. ¶ 12.

Finding that the forum selection clause in the contract between the parties is both enforceable and applicable to Plaintiffs' claims, the Court will dismiss this action.  A separate order consistent with this memorandum will issue.

                                      /s/
                            _____
                            William M. Nickerson
                            Senior United States District Judge

Dated: January 11, 2005